UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK TRZECIAK and
JULIE TRZECIAK,

          Plaintiffs,                    Case Number 21-10737

v.                                         Honorable David M. Lawson

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

          Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS

Plaintiffs Mark Trzeciak and Julie Trzeciak have filed an amended complaint on behalf of a putative class suggesting that they do not believe that they are at all in good hands with their insurer, Allstate. They contend that Allstate breached their insurance contract and committed silent fraud by overcharging premiums based on non-risk factors that actually disadvantage long-term policy holders. Allstate does not deny that, but it alleges in its motion to dismiss that even when accepting all the allegations in the amended complaint, the plaintiffs have not stated a cognizable claim. The Court agrees and will grant the motion and dismiss the case.

I.

Mark and Julie Trzeciak have been Allstate automobile insurance policyholders since 2010. Beginning in 2014, Allstate changed the way it calculated auto insurance policy premiums in Michigan by launching a system known as price optimization. Price optimization appears to be a method of assessing an existing policyholder's tolerance for premium increases; it works to maximize how much an insurer may charge a policyholder before that policyholder leaves for another insurer. Allstate implemented price optimization, the plaintiffs allege, by assigning policyholders to one of thousands of "microsegments," then applying a Complimentary Group

Rating (CGR) factor that increases or decreases the premium a policyholder otherwise would pay based on the other risk-related factors used to calculate premiums.

The plaintiffs allege that, to assign microsegments and CGRs, Allstate applies a secret algorithm that determines how much of a premium increase a policyholder will accept before refusing to renew. More often than not, the result is higher premiums based on criteria that are not disclosed to policyholders and have nothing to do with risk. The plaintiffs also allege that price optimization is the last step in the process of calculating premiums, that it is undiscernible to policyholders, that it results in few if any policyholders being grouped into the same microsegment, and that commonly it results in two similarly-situated policyholders — at least from a risk-factor standpoint — paying substantially different rates. It is especially common, the plaintiffs allege, for longtime policyholders like themselves to pay more, because they are less price elastic than newer customers even though they in general are less risky to insure.

The plaintiffs allege that they paid higher premiums as a result of Allstate's price optimization process. They say that Allstate secretly assigned them a microsegment with a positive CGR factor indicating their relatively low sensitivity to premium price changes. And they allege that Allstate did not disclose to them that it uses factors other than risk to determine their premiums and that they would have no way of finding out what microsegment and CGR Allstate has assigned them.

Unlike other states, Michigan does not bar price optimization outright. Regulators have scrutinized the practice, however. The Michigan Department of Insurance and Financial Services recently sent an objection letter to Allstate asking about its pricing practices, including whether policyholders with the same risk profile could end up paying different rates. It also asked Allstate in 2014 whether it was using price optimization in order to "raise[] rates for policyholders it retains

and reduce[] premiums for new business." Amend. Compl. at ¶ 74, ECF No. 20, PageID.514. In response, Allstate admitted to assigning microsegments and CGRs "based on the following: Expected loss; Policyholder disruption," although, as the plaintiffs point out, Allstate did not also reveal how it determines a policyholder's elasticity to higher premiums. *Id.* at ¶ 75, PageID.515. Allstate's 2014 Michigan rate filing memo disclosed that it had implemented Complementary Group Rating plans, and that policyholders are "assigned to a Complimentary Group based on . . . Policy disruption (quantified using a proprietary retention model)." Rate Memo, ECF No. 22-6, PageID.798, 805. The memo further acknowledges that Allstate uses this proprietary retention model "to quantify policyholder disruption and, as a result, aid in factor selection," *id.* at PageID.801, and that the retention model includes variables like "Historical premium change" and "Premium percentage change," *id.* at PageID.815.

Although Allstate's public filings regarding price optimization in Michigan are limited, the insurer has revealed information about the model in other states. Data filed in Maryland show that Allstate applied vastly different CGRs to customers with identical risk profiles; this led Maryland to block Allstate's attempts to use CGRs. Florida and Georgia also rejected Allstate's price optimization system, and Allstate withdrew proposals to implement it in Louisiana and Rhode Island after regulators raised questions about the practice. The plaintiffs allege that Allstate uses the same system in Michigan as in Maryland but has obscured the details here.

The plaintiffs filed their complaint pleading claims of breach of contract and fraudulent concealment and seeking to certify a class. They also pleaded a claim for unjust enrichment, which they subsequently withdrew. The defendant responded in June with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The plaintiffs filed an amended complaint that makes additional allegations regarding the defendant's price optimization model, and the defendant

responded with a motion to dismiss the amended complaint. The Court heard oral argument on the motion on October 26, 2021.

II.

The purpose of a motion under Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiff, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Unsupported conclusions will not suffice. "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Ibid.* (quoting *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579,

586 (6th Cir. 2010). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Subject matter jurisdiction in this case is based on the minimal diversity requirements of the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2). Because this is a diversity action, the Court must follow state substantive law, as prescribed by the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the state supreme court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state's highest court] would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)). The parties agree that Michigan law governs.

A.

Count I of the amended complaint is labeled breach of contract, but the plaintiffs do not point to a specific contract term that Allstate failed to honor. Instead, the plaintiffs base this count of their amended complaint on a breach of an implied covenant of good faith and fair dealing.

Michigan courts have observed that this covenant "is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Bank of America, NA v. Fidelity National Title Ins. Co.*, 316 Mich. App. 480, 501, 892 N.W.2d 467, 479 (2016) (quoting *Hammond v. United of Oakland, Inc.*, 193 Mich. App. 146, 151-52, 483 N.W.2d 652, 655 (1992)). However,

"Michigan does not recognize an *independent tort action* for breach of a contract's implied covenant of good faith and fair dealing." *Bd. of Trustees of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*, 767 F. Supp. 2d 793, 805 (E.D. Mich. 2011) (emphasis in original). Rather, Michigan recognizes that an enforceable implied covenant of good faith and fair dealing arises "*only* where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citing *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law)). Discretion may arise "from a lack of clarity or from an omission in the express contract." *Ibid.*

The plaintiffs contend that Allstate breached this implied covenant by relying on non-risk-based factors to calculate their insurance premiums. To explain the alleged breach, they make two arguments, which contradict each other.

First, the plaintiffs argue that Allstate's uniform insurance contracts left to Allstate's sole discretion "what factors were used to determine pricing." Am. Compl., ¶ 109, ECF No. 20, PageID.523. They do not allege that any contractual provision makes *performance* a matter of Allstate's own discretion, however. *See Stephenson*, 328 F.3d at 826. Rather, the plaintiffs allege the opposite: that Allstate's policy renewal documents set out specific risk-based pricing factors, and that Allstate was "supposed to" calculate their premiums based "solely" on those factors but did not. Am. Compl., ¶ 112, 114, ECF No. 20, PageID.524-25. This amounts to a simple claim of breach of contract, which the facts alleged in the plaintiffs' amended complaint do not support.

Second, the plaintiffs allege that Allstate *omitted* from the contracts "what factors it would use to determine pricing of insurance premiums." *Id.* at ¶ 109. This is effectively an argument that, because Allstate's policy documents were silent as to whether Allstate could use non-risk-based factors to calculate premiums, Allstate's use of those factors must be discretionary. But the

policy documents are *not* silent on this point. To the contrary, Allstate's uniform renewal policy documents state that "[t]here is a proprietary retention model used to quantify policyholder disruption and, as a result, aid in factor selection," Rate Memo, ECF No. 22-6, PageID.801; that policyholders are "assigned to a Complimentary Group based on . . . Policy disruption (quantified using a proprietary retention model), *id.* at PageID.805; and that the retention model includes non-risk-based variables like "Historical premium change" and "Premium percentage change," *id.* at PageID.815. Moreover, the plaintiffs' position that Allstate had "discretion" through omission is counter-factual in light of their allegations that the documents specifically defined the risk-based factors that should be used to price premiums. Am. Compl., ¶ 114, ECF No. 20, PageID.525.

Finding a violation of the covenant of good faith and fair dealing is difficult for another reason. The allegations in the amended complaint clearly show that Allstate established a premium, told the plaintiffs what it was, and they paid it. The plaintiffs allege essentially that the amount charged amounted to price gouging. But there can be no question that amount of premium was an express term of their insurance contract. The implied covenant of good faith and fair dealing does not adhere "when the parties have 'unmistakably expressed their respective rights,'" *Stephenson*, 328 F.3d at 827 (citing *Hubbard*, 873 F.2d at 877), and the Court will not apply it "to override express contract terms," *ibid.* (quoting *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 657 (6th Cir. 2000) (applying Michigan law)).

Count I of the amended complaint does not state a viable claim.

B.

The plaintiffs also allege that Allstate is guilty of silent fraud because it concealed the factors it used to set premium rates. The elements of that tort mirror Michigan's common law fraudulent concealment cause of action, which requires a plaintiff to plead facts showing "(1) [t]hat

defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555, 817 N.W.2d 562, 567-68 (2012). However, for silent fraud, the plaintiff also must plead that there was "a duty to disclose," and a failure to disclose. *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 412, 617 N.W.2d 543, 550 (2000).

In fact, "[e]ven before reaching the issue of whether a plaintiff has met the prima facie elements of a silent fraud claim in Michigan, the plaintiff must first show that the alleged silence 'occurred under circumstances where there was a legal duty of disclosure.'" *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006) (citing *M&D Inc. v. W.B. McConkey*, 231 Mich. App. 22, 29, 585 N.W.2d 33, 37 (1998)); *see also United States Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 125, 313 N.W.2d 77, 88 (1981). "Whether a duty exists is a question of law, not a question of fact." *Lucas v. Awaad*, 299 Mich. App. 345, 365, 830 N.W.2d 141, 153 (2013) (citing *Valcaniant v. Detroit Edison Co.*, 470 Mich. 82, 86, 679 N.W.2d 689 (2004)).

A duty to disclose arises "most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 666 (6th Cir. 2013) (quoting *Hord*, 463 Mich. at 412, 617 N.W.2d at 550). Whether or not the duty is created by inquiry, there must be a "legal or equitable duty of disclosure." *McConkey*, 231 Mich. App. at 32, 585 N.W.2d at 39.

The plaintiffs do not cite any authority establishing that Allstate had a duty to disclose all the factors it used to calculate insurance premiums. They acknowledge that they did not ask Allstate about the factors it used to calculate premiums, Opp. to MTD, ECF No. 26, PageID.980, and they are correct that Michigan law does not *require* them to have made such an inquiry, *McConkey*, 231 Mich. at 33-34, 585 N.W.2d at 40. But the law does require the plaintiffs to establish that Allstate had a duty to disclose, whether because the plaintiffs made a specific inquiry or otherwise. *Id.* at 32, 39.

The plaintiffs have not made this showing. Instead, they suggest that Allstate's nondisclosure itself created a duty to disclose. Am. Compl., ¶ 135, ECF No. 20, PageID.529; Opp. to MTD, ECF No. 26, PageID.978-80. But courts have rejected this circular argument, including in the same cases the plaintiffs attempt to cite in support of it. The *McConkey* court specifically rejected the proposition that the failure to disclose a material fact alone creates a duty to disclose, concluding that "there is no general inchoate duty to disclose" in fraud cases. *McConkey*, 231 Mich. App. at 30-32, 585 N.W.2d at 38-39; *see also Hord*, 463 Mich. at 412, 617 N.W.2d at 550 (finding that "mere nondisclosure is insufficient" to create a duty to disclose). Other cases cited in the plaintiffs' brief are not relevant to the present dispute. Neither *Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 F. App'x 440, 446 (6th Cir. 2009), nor *Cooper v. Auto Club Ins. Ass'n.*, 481 Mich. 399, 415-16 (2008), nor *Strand v. Librascope, Inc.*, 197 F. Supp. 743, 753 (E.D. Mich. 1961), involved fraudulent concealment claims, and the holding in the latter — that all parties are "under a duty to use diligence in making a complete disclosure of facts" — was narrowly tailored to the "singular circumstances" of that case.

Even if Allstate had a duty to disclose all the factors it uses to set premiums, the silent fraud count still is inadequate. The enhanced pleading requirements of Federal Rule of Civil Procedure

9(b) apply to claims like this. *Wozniak v. Ford Motor Co.*, No. 17-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (quoting indirectly *Republic Bank & Trust Co. v. Bear Stearns & C*o., 683 F.3d 239, 256 (6th Cir. 2012)). But the plaintiffs have not pleaded any facts to support their allegation that Allstate omitted the non-risk-based factors with the intent to defraud the plaintiffs, as they must. The amended complaint is conclusory and devoid of supporting facts regarding intent, and the plaintiffs' brief in opposition to the motion to dismiss does not discuss intent at all. Because the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a silent fraud claim fails as a matter of law if the plaintiff "put[s] forth no specific evidence that [the] Defendant intended to defraud her." *Dugan v. Vlcko*, 307 F. Supp. 3d 684, 699 (E.D. Mich. 2018).

The plaintiffs' silent fraud claim must be dismissed.

C.

One more point deserves discussion. Allstate argues that the claims cannot proceed because the plaintiffs have failed to exhaust their administrative remedies, the claims are barred by the filed rate doctrine, and the Michigan Department of Insurance and Financial Services has primary jurisdiction over their claims. The Court disagrees; none of these defenses would upset the plaintiffs' causes of action, if any were viable.

Allstate relies mainly on *McLiechey v. Bristol W. Ins. Co.*, 408 F. Supp. 2d 516 (W.D. Mich. 2006), *aff'd*, 474 F.3d 897 (6th Cir. 2007), to support its exhaustion and primary jurisdiction argument. The facts of that case are analogous but not identical to the present matter. There, the plaintiffs also challenged the criteria an auto insurer used to set rates; it argued that the insurer breach of the implied covenant of good faith and fair dealing. *Id.* at 518. The court dismissed the plaintiffs' complaint on the grounds that they either had failed to exhaust the administrative

remedies in the Michigan Insurance Code or that their claims were barred by the primary jurisdiction doctrine. *Id.* at 518, 525-26. The court determined that, because "resort[ing] to . . . administrative procedures would further the policies which underlie the doctrine of exhaustion of administrative remedies and the doctrine of primary jurisdiction," the plaintiffs must first file their claims with the Commissioner, "whether or not [they] can obtain the remedy they seek." *Id.* at 525. There, as here, the plaintiffs sought damages, a remedy Michigan's insurance commissioner cannot provide. *Id.* at 520-21.

But *McLiechey* is readily distinguishable. The essence of the claims in *McLiechey* were that the insurer violated the insurance code, and there was no dispute over the availability of administrative remedies. *Id.* at 525. Here, however, the plaintiffs have not alleged that Allstate violated insurance code, and, if they are not challenging rate filings or their application, administrative remedies likely are not available to them. The relevant section of the insurance code, which was also central in *McLiechey*, applies to grievances "with respect to any insurance rate filing," and allows for the aggrieved person to apply to the Commissioner "for a hearing on the filing." *Id.* at 518 (quoting Mich. Comp. Laws § 500.2114(1)). It is not clear what purpose the exhaustion of any available remedies would serve in this case. Judicial consideration of the plaintiffs' claims will not disrupt administration of the insurance code; the insurance department developing a record will not help the Court resolve the plaintiffs' contractual claims; the legislature has not entrusted the department to resolve such claims; and a successful agency settlement would not avoid the plaintiffs returning to court to seek damages. *See Doster v. Estes*, 126 Mich. App. 497, 514-15, 337 N.W.2d 549, 557 (1983).

Moreover, *McLiechey* sweeps too broadly in requiring plaintiffs to exhaust administrative remedies that clearly will not provide them the relief they requested. A "long line" of cases have

come to the opposite conclusion. *See, e.g.*, *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) (finding that the exhaustion requirement did not apply to a federal prisoner because administrative officials did not have the authority to award the money damages he sought); *Patsy v. Fla. Int'l Univ.*, 634 F.2d 900, 903 (5th Cir. 1981) (finding that the exhaustion requirement did not apply to a claimant challenging the constitutionality of a statute, which the administrative process could not address, and collecting cases).

Allstate's defense of primary jurisdiction fails for similar reasons. Allstate argues that this case involves complex questions of rate-making that are outside the Court's conventional expertise, but that is not so. Determining whether Allstate breached the covenant of good faith and fair dealing or committed silent fraud does not require the Court to question Allstate's or the insurance department's actuarial conclusions. It merely requires determining whether Allstate fulfilled its contractual obligations to the plaintiffs, which is well within the Court's expertise. The two other courts that considered similar claims challenging Allstate's price optimization practices came to the same conclusion. *See Shannon v. Allstate*, No. 20-448-LY (W.D. Tex. August 6, 2021); *Corbin v. Allstate Corporation*, 140 N.E.3d 810, 816 (Ill. App. Ct. 2019).

Allstate's argument that the filed-rate doctrine bars the plaintiffs' claims also fails. Although the plaintiffs' claims implicate elements of Allstate's filed rates — Allstate's CGRs and microsegments — they do not challenge the elements of the rate itself. Rather, their claims center on whether Allstate properly disclosed those rating elements in their contract. "[C]hallenges that involve discussion of rates but do not challenge their reasonableness . . . are permitted" under the filed-rate doctrine, *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 796 (6th Cir. 2012), as are challenges to an insurer's "allegedly wrongful conduct" that do not implicate "the reasonableness or propriety of the rate that triggered that conduct," *Alston v. Countrywide Fin. Corp.*, 585 F.3d

753, 765 (3d Cir. 2009). Moreover, the filed-rate doctrine permits plaintiffs to bring contractual claims challenging the *application* of protected rates. *See Town of Norwood v. New England Power Co.*, 202 F.3d 408, 416 (1st Cir. 2000) ("Thus, the tariff may be protected by the filed rate doctrine but whether the tariff applies to Norwood depends on the extent of Norwood's contractual obligations."). The filed-rate doctrine therefore does not preclude the plaintiffs' claims.

III.

Although Allstate's defenses miss the mark, the amended complaint itself does not state claims for which relief can be granted.

Accordingly, it is **ORDERED** that the defendant's second motion to dismiss (ECF No. 22) is **GRANTED** and its first motion to dismiss (ECF No. 16) is **DENIED as moot**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: October 29, 2021